JOHN MEIERS and SALLY MEIERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Meiers v. Commissioner
Docket No. 25414-81.
United States Tax Court
T.C. Memo 1984-607; 1984 Tax Ct. Memo LEXIS 70; 49 T.C.M. (CCH) 136; T.C.M. (RIA) 84607; November 20, 1984. Gaar W. Steiner, for the petitioner. Crispin G. Cantrell, for the respondent. SWIFT MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: By statutory notice of deficiency dated July 18, 1981, respondent determined deficiencies in petitioners' Federal income tax liabilities as follows: Year
Deficiency
1977
$18,207
1978
18,283
1979
12,887 After concessions by the parties, the onlyissue for decision is whether petitioners are entitled to deduct the expenses of a home office under Section 280A. [1]
*71 FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners John and Sally Meiers are husband and wife and resided in Appleton, Wisconsin, at the time the petition herein was filed. Petitioners timely filed their Federal income tax returns for 1977, 1978, and 1979. Petitioners were the sole shareholders of the Appleton Laundry Corporation (ALC) which operated a self-service laundromat and dry-cleaning business known as Appleton Laundry. John also held an interest in a partnership, J & J Enterprises (J & J), which owned and leased two rental properties. Appleton Laundry was located in a commercial building approximately one mile from petitioners' home. The laundromat consisted of a single room, approximately 25' X 60', that housed several coin-operated washing machines, dryers, and dry cleaners. ALC employed three attendants and two cleaning persons to work part-time at the laundromat. The attendants operated the laundromat from 7 a.m. until 9 p.m. during which time they assisted customers, made change, sold laundry products, and laundered customers' clothing for a fee. Sally worked at the laundromat for about an hour each day, during *72 which time she met with the employees, collected money from the machines, filled the change machines, and assisted customers. Sally's primary responsibility with respect to ALC, however, was to do the bookkeeping and other managerial tasks associated with the business such as counting the money and scheduling employees to work. For this purpose, petitioners maintained an office in a separate room in their home, which consisted of a desk, filing cabinet, safe, change counter, and sofa. Sally used this office for approximately two hours every day to do ALC's bookkeeping and also for about five minutes each month to account for two rental payments received by J & J and one mortgage payment issued by J & J. This separate room was used exclusively for the purpose of performing these administrative duties for ALC and J & J. OPINION The only issue for decision is whether petitioners are entitled to a deduction for the expense of maintaining an office in their home. Section 280A generally disallows a deduction to a taxpayer for the use of a dwelling unit that is used by the taxpayer as a residence. [2] If, however, an allocable portion of the dwelling unit is used exclusively *73 on a regular basis as the principal place of the taxpayer's business or is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, a deduction may be allowed to the extent that it does not exceed the gross income derived from the trade or business for which the home office is used. Section 280A(c)(1) and (5). *74 Petitioners argue that the home office was used exclusively on a regular basis for the convenience of ALC in order for Sally to do ALC's bookkeeping and other administrative duties. Petitioners contend that there was no separate room or adequate space at the laundromat in which these duties could be performed and that, therefore, the home office was essential to the operation of ALC. Petitioners also argue that Sally spent two-thirds of her work day at the home office and thus it was her principal place of business. Petitioners further contend that the home office was J & J's principal place of business. Respondent concedes that petitioners used the office in their home exclusively and on a regular basis for susiness purposes.Respondent asserts, however, that petitioners' principal place of business was at the laundromat itself, and not in the home. Respondent also argues that J & J was not a "trade or business" within the meaning and intent of section 280A(c)(1)(A). Even assuming J & J was a "trade or business," respondent argues that the expense of the home office is not deductible because the home office was not J & J's principal place of business. We agree with *75 respondent. Although petitioners did use one room in their home exclusively for business purposes, the home office was not petitioners' principal place of business. Although not defined in section 280A, extensive case law has construed the phrase "principal place of business" as it is employed in section 280A(c)(1)(A) to be the specific situs in which the business is carried on or the "focal point" of the business' activities. See ; ; , appeal dismissed (9th Cir. 1983) by agreement of the parties. There can be only one principal place of business for each business in which a taxpayer is involved. ; ; . In Baie, the taxpayer owned a small hot dog stand (10' X 10') from which she sold food that had been previously prepared in her home. The taxpayer deducted the expense of an allocable portion of her *76 kitchen as well as the expenses of maintaining an office in her home that was used exclusively to keep the business' books. This Court denied the taxpayer's home office deduction in Baie, holding that, even though the preliminary food preparation may have been beneficial and necessary to the efficient operation of the taxpayer's business, the legislative history of section 280A mandated a narrow interpretation of the language "principal place of business." We reasoned that because the taxpayer packaged and sold the food product at the hot dog stand, and because it was this sale that generated the taxpayer's income, the hot dog stand itself was the taxpayer's principal place of business. . Petitioners contend that Baie is not dispositive of the issue herein because Sally's use of the home office was essential to the business, whereas in Baie the use of the home office was merely beneficial to the business. Petitioners also assert that although the laundromat may have been the principal place of business of ALC, it was not Sally's principal place of business, because she spent two-thirds of her working hours *77 at the home office. Petitioners rely on , revg. , wherein the taxpayer, a concert musician, was allowed a deduction under section 280A for a practice room in his home. This Court had denied the deduction, consistent with Baie, holding that the musician's principal place of business was the concert hall in which he regularly performed. The Second Circuit reversed stressing the unique nature of a concert musician's business. Respondent contends, and we agree, that petitioners operated a business more similar to the fact food vendor in Baie than to the concert musician in Drucker. Thus, Baie controls the instant case and compels the conclusion that the principal place of petitioners' laundromat business was at the laundromat. All revenues received by petitioners from ALC were generated through the use of machines located at the laundromat, and, as far as we can tell, at no time did ALC's customers or employees (other than Sally) conduct business at the home office. The number of hours that Sally used the home office, alone, does not necessarily determine whether the *78 office qualifies as her principal place of business. ; . The facts clearly establish that the "focal point" of petitioners' laundromat business was at the laundromat. Whether the activities of J & J constituted a trade or business is a question of fact in which the scope of petitioners' ownership and management activities may be an important consideration. . Petitioners have offered no evidence with respect to the managerial duties they performed at their home on behalf of J & J, other than Sally's accounting of a monthly mortgage payment and receipt of two rental payments. On this record, we find that those activities on behalf of J & J do not rise to the level of a trade or business being conducted in petitioners' home. However unfortunate it may be for petitioners, the language of section 280A is unambiguous in its application to the facts of the instant case, and we are not at liberty to allow the claimed deduction. Accordingly, we hold for respondent. Due to concessions, Decision will *79 be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. Section 280A provides in relevant part: (a) General Rule.--Except as otherwise provided in this section, * * * no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. * * * (c) Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use.-- (1) Certain business use.-- Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis-- (A) [as] the principal place of business for any trade or business of the taxpayer, (B) As a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, * * * (5) Limitation on deductions.-- * * * where the dwelling unit is used by the taxpayer during the taxable year as a residence, the deductions allowed under this chapter for the taxable year by reason of being attributed to such use shall not exceed the excess of-- (A) the gross income derived from such use for the taxable year, over (B) the deductions allocable to such use which are allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was so used.↩